# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAMONT BRUCE,  )
    Plaintiff  )
 ) C.A.No. 14-129ERIE
vs. )
 )
PAUL ENNIS, et al, ) Magistrate Judge Baxter
    Defendants. )

## MEMORANDUM OPINION

Magistrate Judge Susan Paradise Baxter[1]

    Plaintiff, a state inmate acting *pro se*[2], initiated this civil rights action on April 28, 2014. As Defendants to this action, Plaintiff named: Paul Ennis, John Chiles, Edward Heberling[3], John Flatt, Jeffrey Case, Mark Hacherl, John Montour, and John Means, all current or former employees of the Department of Corrections.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

[2] *Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds by Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001). Because Plaintiff filed the complaint while he was a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

[3] Mr. Heberling is deceased.

1

Plaintiff alleges that Defendants failed to protect him from attack by a fellow inmate. Plaintiff claims that: 1) Defendants Ennis, Heberling, Flatt and Montour acted with deliberate indifference by removing his Z-code status in May of 2012, and 2) thereafter Defendants Chiles, Case, Hacherl and Means acted with deliberate indifference by assigning Inmate Gillis to cell with Plaintiff and by refusing to heed the warnings from Plaintiff that Gillis repeatedly threatened him with physical violence. On October 31, 2012, Gillis attacked Plaintiff with an open razor blade while he slept. Plaintiff suffered severe injuries to his face, throat, and arm.

In response to the complaint, four of the eight Defendants (Ennis, Heberling, Flatt and Montour) have filed a motion to dismiss.[4] ECF No. 16. An opposition brief has been filed on Plaintiff's behalf by newly obtained counsel. ECF No. 18. The present motion is ripe for disposition by this Court.

### A. Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

---

[4] The remaining Defendants have filed neither a motion to dismiss nor an answer to the complaint.

2

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint' is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there

3

>are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

The parties have filed exhibits in support of, and in opposition to, the motion to dismiss. The use of these exhibits by this Court does not convert Defendants' motion to dismiss into motion for summary judgment. Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment.").

### B. The Prison Litigation Reform Act

#### 1) The Exhaustion Requirement

Defendants Ennis, Heberling, Flatt and Montour move to dismiss the claim against them based upon Plaintiff's failure to exhaust his administrative remedies in accordance with the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

>no action shall be brought with respect to prison conditions under
>section 1983 of this title ... by a prisoner confined in any jail, prisons,
>or other correctional facility until such administrative remedies as
>are available are exhausted.

Id. The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013). The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.[5]

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and

---

[5] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

5

claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004) (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

### 2) The Administrative Process Available to State Inmates

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

### 3) Analysis of Plaintiff's use of the administrative remedy process

In his *pro se* complaint, Plaintiff alleges that he exhausted his administrative remedies through Grievance Numbers 488060 and 488113.[6] In support of their motion to dismiss,

---

[6] It is not a plaintiff's burden to affirmatively plead exhaustion. Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir.2013); Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or

6

Defendants point out that Grievance 488060 mentions no names but only complains of the actions of "SCI Forest staff" relative to the revocation of his Z-code status and the attack by Inmate Gillis. Defendants provide no argument as to the other grievance (488113) mentioned by Plaintiff in the complaint.

In opposition to the motion to dismiss, Plaintiff argues that besides Grievances 488060 and 488113, there is at least one additional grievance (410845) filed on May 1, 2012 (the day Plaintiff's Z-code status was removed) that pertains to the subject matter of this case. Plaintiff contends that without conducting discovery it is premature to grant a motion to dismiss on the basis of failure to exhaust. This Court agrees.

The motion to dismiss will be denied in this regard.

### C. Failure to Protect

#### 1) Plaintiff's allegations

In his complaint, Plaintiff alleges that prior to and during his incarceration, he has lived a "sexually alternative lifestyle."[7] ECF No. 5, ¶ 2. During the early part of his incarceration, Plaintiff was subject to "numerous physical attacks by several different homophobic cell-mates." Id. at ¶ 3. In 1997, while incarcerated at SCI Pittsburgh, Plaintiff was physically assaulted by a homophobic cellmate. Id. at ¶ 4.

In November of 1997, Plaintiff was assigned Z-code (or single-cell) status by SCI Pittsburgh staff. Id. at ¶ 5. Plaintiff alleges this Z-code assignment was based on the physical

---

demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[7] This is the term by which Plaintiff describes himself.

7

altercations which were motivated by Plaintiff's "sexually alternative lifestyle" and for mental health reasons. Id.

Plaintiff retained the Z-code status until May 1, 2012. Id. at ¶ 6. On that date, Plaintiff met with Heberling and Montour who informed him that his Z-code was being lifted by decision of Heberling, Montour, Ennis, and Flatt. Id. at ¶¶ 7-8. Plaintiff protested, explaining that he would be "subjected to physical violence" by a cellmate "because Plaintiff is a homosexual." Id. at ¶ 9.

Plaintiff alleges he informed Heberling, Montour, Ennis and Flatt that he had experienced physical harm at the hands of several cellmates prior to his Z-code assignment, and that the assignment was made due to such violence. Id. at ¶ 10. Plaintiff alleges that these Defendants disregarded the risk to his safety and removed the Z-code status despite Plaintiff's protestations. Id. at ¶ 11. After Plaintiff was celled with a cellmate, his cellmate attacked him while he slept. Id. at ¶¶ 12-13.

### 2) The motion to dismiss

Defendants move to dismiss this claim arguing that Plaintiff has failed to state a failure-to-protect claim against Ennis, Heberling, Flatt and Montour.

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994). To succeed on an Eighth Amendment claim alleging a failure to protect, a plaintiff must

show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" (3) the defendant actually drew that inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer, 511 U.S. at 834-37.

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." Hamilton, 117 F.3d at 747. "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." Id. "In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious." Jones v. Day, 2007 WL 30195 at *4 (W.D. Pa. Jan. 4, 2007). For instance:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43 (citations omitted).

Here, Defendants argue that Plaintiff has failed to state a cognizable failure to protect claim against these Defendants because the statements Plaintiff made to them "were the furthest thing away from articulating a specific threat of serious harm" because the statements "are nothing more than Plaintiff's nebulous concern that something might possibly happen to him by some unknown cellmate at some time in the future." ECF No. 17, page 8. This is not the case here. Plaintiff alleges that he told these Defendants specifically that he was repeatedly attacked at another institution based upon his "sexually alternative lifestyle" and was given Z-code status because of the attacks.

It is sufficient at this stage to note that Plaintiff's allegations contain enough information from which it may be found that these Defendants each knew and disregarded the fact that Plaintiff faced a substantial risk of serious harm if he were to be celled with another inmate. Thus, Defendants' motion to dismiss Plaintiff's claim against Defendants Ennis, Heberling, Flatt and Montour will be denied.

An appropriate order will be entered.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMONT BRUCE, )<br>  Plaintiff ) | |
| ) | C.A.No. 14-129ERIE |
| vs. ) | |
| ) | |
| PAUL ENNIS, et al, ) | Magistrate Judge Baxter |
|   Defendants. ) | |

## O R D E R

AND NOW, this 17th day of September, 2015;

IT IS HEREBY ORDERED that Defendants' motion to dismiss [ECF No. 16] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to substitute party [ECF No. 19] is GRANTED. Sherri J. Armstrong, in her capacity as Executor of the Estate of Edward A. Heberling, Jr., is hereby substituted for Edward Heberling as a Defendant.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

11